UNITED STATES DISTRICT COURT
DISTRICT OF CONNECTICUT

BRIAN HERNDON,                         :

          Petitioner,                  :

V.                                     :   Case No. 3:10-CV-1997(RNC)

UNITED STATES OF AMERICA,              :

          Respondent.                  :

RULING AND ORDER

Brian Herndon was convicted after a jury trial of knowingly possessing child pornography in violation of 18 U.S.C. § 2252A(a)(5)(B) and sentenced by Judge Dorsey to 72 months' imprisonment followed by five years of supervised release. Proceeding pro se, he brings this action under 28 U.S.C. § 2255 challenging his conviction and sentence on a variety of grounds. The government urges that the claims in the petition are procedurally defaulted and without merit. I agree and therefore dismiss the petition.

I. Background

This case arises out of an investigation conducted by agents of United States Immigration and Customs Enforcement ("ICE") into a website named "illegal.cp," which distributed child pornography online. An ICE agent subscribed to the website for $79.99 using a credit card. The $79.99 charge appeared on the credit card as a purchase from a company named "AdSoft." A list of other credit card users who made purchases from this company to become

1

subscribers to the website was obtained by ICE agents.  Herndon's
name and credit card number appeared on the list.  ICE agents
sought a warrant to search his computer but their application was
denied.  The agents then went to his home in Mystic, Connecticut,
and undertook to interview him.

At the beginning of the interview, Herndon confirmed that he
had internet access and that the credit card used to subscribe to
the child pornography website was his.  According to the ICE
agents' testimony at trial, he admitted that he had accessed
child pornography on his computer and then consented orally and
in writing to a search of two hard drives he had hooked up to his
computer stating, "I know I'm fucked for giving you these hard
drives."  A forensic examination of the hard drives disclosed
that they contained thousands of images of child pornography
organized into folders with descriptive names.  Herndon was then
arrested for possession of child pornography.

Prior to trial, Herndon moved to suppress the evidence
obtained from the hard drives claiming that the ICE agents had
tricked him into signing a consent to search form by pretending
that they believed he was a victim of identity theft and needed
to search his computer to verify that a third party had hacked
into it.  Judge Dorsey denied the motion without an evidentiary
hearing on the ground that the agents' alleged deceit did not
render the consent invalid.  See USA v. Herndon, 3:08-CR-78(PCD),

2

Ruling Den. Mot. to Supp. (ECF NO. 70).  Accepting Herndon's version of events as true for purposes of the ruling, Judge Dorsey found that Herndon gave consent to the agents to search the hard drives knowing the results of the search could lead to his arrest.

At the ensuing jury trial, Herndon stipulated that his hard drives contained 655 images of child pornography and that the images had been transported in interstate commerce.  The government presented evidence showing that Herndon had subscribed to the illegal.cp website, that he had received an email from the website confirming his subscription, and that the email included links to three websites containing child pornography.  Herndon's credit card statements included two charges to AdSoft for $79.99, on October 26, 2005, and June 26, 2006.  His computer also contained a list of child pornography sites on the menu of his internet favorites.  Forensic examination of Herndon's computer revealed that a batch of photos clearly related to him was stored in close physical proximity to images of child pornography and that a user of the computer had accessed the batch of photos in close temporal proximity to images of chid pornography.  Forensic examination of the computer also showed that the address of one of the three child pornography websites made available with the subscription to the website illegal.cp had been removed from the computer using software called Privacy Guardian.  The jury was

allowed to view a limited number of the images of child
pornography found on the hard drives.

Testifying on his own behalf, Herndon denied downloading the
images of child pornography found on his computer.  He claimed
that a hacker must have stolen his identity and downloaded the
images.  This was the defense recommended by the illegal.cp
website itself, which provided subscribers with the following
advice:

> Our site is considered to be illegal in all countries . . .
> Even if you ever have any problems with police, you can
> always say that someone had stolen the information from your
> credit card and used it.  It is very difficult to establish
> that you are the very person to pay.

Herndon testified that the other incriminating evidence found on
his computer resulted from his own investigation into the theft
of his identity.

At sentencing, the Court found that Mr. Herndon had an
adjusted offense level of 33 and a criminal history category of
I, resulting in a guideline range of 135-168 months'
imprisonment, which exceeded the statutory maximum of 120
months.[1]  Judge Dorsey concluded that the guideline range was

---

[1] The base offense level of 18 for possession of child
pornography under U.S.S.G. § 2G2.2(a)(1) was enhanced by two
levels because the offense involved a prepubescent minor under
the age of 12, four levels because the material portrayed
sadistic or masochistic conduct, two levels because the offense
involved use of a computer, five levels because the offense
involved more than 600 images, and two levels because Mr. Herndon
had testified falsely.  The government argued for an additional
two-level enhancement for reckless endangerment under U.S.S.G.

"much higher than reasonably necessary for the purposes of 18 U.S.C. § 3553(a)."  Mr. Herndon received a below-Guidelines sentence of 72 months' incarceration followed by five years' supervised release.  <u>See</u> <u>USA v. Herndon</u>, 3:08-CR-78(PCD), Judgment (ECF No. 101).

Herndon appealed raising five claims: (1) the Court erred in allowing the government to display images of child pornography to the jury despite the stipulation that they constituted child pornography; (2) the Court erred in admitting images of Herndon's neighbor sun-bathing; (3) the Court improperly questioned him; (4) the Court erred in instructing the jury; and (5) the Court erred in failing to poll the jurors individually.  The Court of Appeals rejected these claims and affirmed the judgment.  <u>See</u> <u>Herndon v. United States</u>, 359 F. App'x 241 (2d Cir. 2010). In doing so, the Court observed, "this was not a close case." <u>Id.</u> at 244.

Herndon's § 2255 motion makes the following claims: (1) prosecutorial misconduct was committed when the prosecutor referred to matters not in the record, intimidated the defendant, and elicited inappropriate testimony from witnesses; (2) ICE agents illegally searched and seized the hard drives in violation of the Fourth Amendment; (3) Herndon's statements to the ICE

---

3C1.2, but the Court determined that it did not have to resolve
the issue as the guideline range already exceed the statutory
maximum.

agents during the investigation should have been excluded under
the Fifth Amendment; (4) the sentence of 72 months' incarceration
is substantively unreasonable; and (5) Herndon's counsel was
ineffective in that he failed to subpoena a computer forensic
expert, advised Herndon to stipulate that the hard drives
contained 655 images of child pornography, and advised him to
stipulate that the images had moved in interstate commerce.  None
of these claims provides a basis for setting aside the conviction
or sentence.[2]

## II. Discussion

Under § 2255, relief is generally available only for "a
fundamental defect which inherently results in a complete
miscarriage of justice."  <u>Davis v. Hill</u>, 417 U.S. 333, 346

---

[2] In a supplemental submission filed after the deadline
applicable to motions under § 2255, Herndon raises an additional
ground for his claim of prosecutorial misconduct -- the
prosecutor showed inflammatory images to the jury despite the
stipulation as to their content -- and an additional ground for
his claim of ineffective assistance of counsel -- his appellate
counsel failed to file a petition for a writ of certiorari.
These additional grounds require no extended discussion.  The
Second Circuit has already ruled that the stipulation concerning
the content of the images "was an insufficient substitute for the
actual evidence" and that the images were properly admitted for
the purposes of allowing the jury to determine "how likely it was
that Herndon knew the images were child pornography."  <u>Herndon</u>,
359 F. App'x at 242-43.  A § 2255 motion "may not relitigate
issues that were raised and considered on direct appeal."  <u>United
States v. Perez</u>, 129 F.3d 255, 260 (2d Cir. 1997).  Moreover, the
Second Circuit has held that appellate counsel's failure to file
a petition for a writ of certiorari, or inform a defendant of the
possibility of certiorari review, does not provide a basis for
habeas relief.  <u>See</u> <u>Pena v. United States</u>, 534 F.3d 92, 96 (2d.
Cir. 2008).

(1974); Graziano v. United States, 83 F.3d 587, 590 (2d Cir. 1996).  In addition, a defendant ordinarily is barred from challenging a conviction under § 2255 on a ground that could have been raised on direct appeal but was not.  Yick Man Mui v. United States, 641 F.3d 50, 53-54 (2d Cir. 2010); Zhang v. United States, 506 F.3d 162, 166 (2d Cir. 2007).  When a defendant fails to raise a claim on direct appeal, "he is barred from raising the claim in a subsequent § 2255 proceeding unless he can establish both cause for the procedural default and actual prejudice resulting therefrom or that he is actually innocent of the crime of which he was convicted."  De Jesus v. United States, 161 F.3d 99, 102 (2d Cir. 1998) (internal citations omitted).  To establish cause, a defendant ordinarily must show "some objective factor external to the defense" that prevented him from raising the claim.  Clark v. Perez, 510 F.3d 382, 393 (2d Cir. 2008); see also Holman v. United States, 3:12-CV-986 JCH, 2013 WL 593778 (D. Conn. Feb. 15, 2013) ("Showing cause for a defaulted claim is a high bar.").  To establish prejudice, he must demonstrate "not merely that the errors at his trial created a *possibility* of prejudice, but that they worked to his *actual* and substantial disadvantage, infecting his entire trial with error of constitutional dimension."  United States v. Frady, 456 U.S. 152, 170 (1982).

A. *Procedural Default*

None of the claims in Herndon's § 2255 motion was presented on direct appeal.  Accordingly, the claims have been procedurally defaulted, with the exception of the claim alleging ineffective assistance of trial counsel, which could not be raised on direct appeal.  See <u>Massaro v. United States</u>, 538 U.S. 500, 508 (2003) ("[F]ailure to raise an ineffective-assistance-of-counsel claim on direct appeal does not bar the claim from being brought in a later, appropriate proceeding under § 2255.").  As his only ground for cause under the cause and prejudice test, Herndon asserts that his appellate counsel was ineffective "for not realizing" the validity of his defaulted claims.  See Pet'r's Reply Br. (ECF No. 18) at 2.[3]   Ineffective assistance of counsel can constitute cause for failure to raise an issue on direct appeal.  <u>Murray v. Carrier</u>, 477 U.S. 478, 488 (1986).  But an attorney's failure to raise an issue does not necessarily constitute a denial of effective assistance.  See <u>Marone v. United States</u>, 10 F.3d 65, 67 (2d Cir. 1993); <u>see also</u> <u>Jones v. Barnes</u>, 463 U.S. 745, 751 (1983) (rejecting argument that, in order to be effective, appellate counsel must raise every nonfrivolous ground for reversal).  Rather, Herndon must demonstrate that his counsel "omitted significant and obvious

---

[3] Herndon was represented by the same counsel at trial and on appeal.

8

issues while pursuing issues that were clearly and significantly weaker." Clark v. Stinson, 214 F.3d 315, 322 (2d Cir. 2000).[4]

Like the defendant in Marone, Herndon has not shown cause for his procedural default.  He does not allege that he asked his attorney to include on the direct appeal the claims asserted in his § 2255 motion.  Because there is no allegation that he asked his lawyer to include these claims on the direct appeal, the failure to raise them can be attributed to his own conduct, which is not a cause external to him under the cause and prejudice test.  See Johnson v. United States, 307 F. Supp. 2d 380, 386 (D. Conn. 2003) ("[Petitioner] makes no claim that he asked his attorney to appeal the issues he now brings before the court. Because he does not allege something more than his attorney failing to raise these claims on direct appeal, under Marone, Johnson has not shown cause for his procedural fault."). Moreover, his counsel's failure to raise the claims on the direct

---

[4] In Marone, the defendant was convicted after a bench trial and there was no direct appeal.  In his § 2255 petition, the defendant claimed that he had been denied effective assistance of counsel because his trial counsel had failed to file a notice of appeal, and that his waiver of his right to a jury trial was invalid.  The Second Circuit ruled that the defendant was barred from raising the issue of whether he validly waived his right to a jury trial because he had failed to instruct his attorney to file a notice of appeal.  The defendant's claim that he only subsequently became aware of the attributes of a jury trial did not support a finding of cause under the cause and prejudice test because "the requirement that 'cause' be external to the petitioner does not encompass a petitioner's alleged belated understanding of his rights."  Id.

appeal did not constitute ineffective assistance because, as
discussed below, each claim is lacking in merit.  See United
States v. Kirsh, 54 F.3d 1062, 1071 (2d Cir. 1995) ("[T]he
failure to make a meritless argument does not rise to the level
of ineffective assistance.").

The prosecutorial misconduct claim is based on the
prosecutor's references to, and government witnesses' testimony
concerning, the presence of a larger quantity of images on the
hard drives than the 655 stipulated to by the parties.  "To
warrant reversal, the prosecutorial misconduct must cause the
defendant substantial prejudice by so infecting the trial with
unfairness as to make the resulting conviction a denial of due
process."  United States v. Parkes, 497 F.3d 220, 233 (2d Cir.
2007).  "In assessing the alleged misconduct, [courts] consider
the severity of the misconduct, the measures adopted to cure it,
and the certainty of conviction in the absence of the
misconduct."  Id.  Here, the alleged misconduct was not serious
in nature, and the case was not close, as the Court of Appeals
observed on the direct appeal.  As a result, the alleged
misconduct does not approach the "high level of prejudice
required to reverse a conviction."  United States v. Heredia, 282
F. App'x 42, 45 (2d Cir. 2008).

The claim that the ICE agents' search of the hard drives
violated the Fourth Amendment fails for substantially the reasons

10

stated by Judge Dorsey in his ruling denying the motion to
suppress:

> The totality of the circumstances show that even *assuming
> arguendo* that Defendant's statement of the facts is true,
> his consent to search was voluntary and knowing. . . .
> Defendant had the capacity to give consent. He gave consent
> to the Agents, knowing they were federal law enforcement
> officers working for ICE.  He gave them specific consent to
> search his two hard drives, handing them over without
> coercion.

Ruling Den. Mot. to Supp. at 6.  Herndon now contends that his
consent was not voluntarily because the agents informed him they
could get a search warrant at any time.  Consent is not voluntary
if given only in acquiescence to a claim of lawful authority.
See Bumper v. North Carolina, 391 U.S. 543, 548 (1968).  But a
threat to obtain a warrant does not render consent to a search
invalid when the totality of the circumstances indicate that the
consent was voluntary.  Herndon's signed consent states that he
was giving the agents permission to search "voluntarily, without
promises or threats being made."  Considering his age,
intelligence, the degree to which he cooperated, his attitude
about the likelihood of the discovery of the child pornography on
his computer, his signed consent, and the information available
to the agents at the time the consent was obtained, any statement
by the agents that they could obtain a warrant does not prevent
the consent from being voluntary.

With respect to the Fifth Amendment claim, Herndon contends that "every statement [he] uttered . . . in his home, must be inadmissible evidence, especially his statements about child pornography possibly being on his computer," because the ICE agents did not give him a <u>Miranda</u> warning.  Pet'r's Mot. to Vacate (ECF No. 1) at 23.  This argument lacks merit because Herdon was not in custody when he was questioned by the ICE agents.  A suspect is in custody for <u>Miranda</u> purposes if there was "a formal arrest or restraint on freedom of the degree associated with a formal arrest."  <u>J.D.B. v. North Carolina</u>, 131 S. Ct. 2394, 2402 (2011) (internal quotations omitted).  The record demonstrates that Herndon consented to the agents' entry into his home, a setting typically deemed non-custodial.  <u>See</u> <u>United States v. Newton</u>, 369 F.3d 659, 677 (2d Cir. 2004).  There is no indication that the agents compelled Herndon's statements by overbearing his will.

The claim that the sentence imposed by Judge Dorsey is substantively unreasonable also lacks merit.  A sentence is substantively unreasonable only if it is "shockingly high . . . or otherwise insupportable as a matter of law."  <u>United States v.</u> <u>Dorvee</u>, 616 F.3d 174, 183 (2d Cir. 2010).  The sentence in this case does not fit this description.  Judge Dorsey sentenced Herndon to a below-Guidelines sentence of 72 months' imprisonment after finding both the guideline range of 135 to 160 months and

the statutory maximum of 120 months to be "excessively greater
than necessary to accomplish the purposes of [§ 3553(a)]." USA
v. Herndon, 3:08-CR-78(PCD), Tr. Sentencing (ECF NO. 111) at 93-
94.  "[I]n the overwhelming majority of cases, a Guidelines
sentence will fall comfortably within the broad range of
sentences that would be reasonable in the particular
circumstances." United States v. Perez-Frias, 636 F.3d 39, 43
(2d Cir. 2011).  "It is therefore difficult to find that a below-
Guidelines sentence is unreasonable." Id.

Because each of Herndon's procedurally defaulted claims
lacks merit, his counsel's failure to raise these claims on
direct appeal does not rise to the level of ineffective
assistance and he has thus failed to show cause for his
procedural default.  Accordingly, he is barred from raising his
defaulted claims.

B. Ineffective Assistance of Trial Counsel

Herndon claims that his trial counsel was ineffective in
that he (1) failed to subpoena a computer forensic expert; (2)
advised the defendant to stipulate to the presence of 655 images
of child pornography on his hard drives; and (3) failed to
contest the jurisdictional prerequisite of 18 U.S.C. § 2252A --
that the images of child pornography had been transported in
interstate commerce.  To succeed on an ineffective assistance
claim, a petitioner must show that (1) his lawyers' performance

13

fell below an objective standard of reasonableness, and (2) there is a reasonable probability that, but for the deficiency, the outcome of the proceeding would have been different.  See Strickland v. Washington, 466 U.S. 668, 688, 694 (1984).  A petitioner's burden under the first Strickland prong is a heavy one because courts "must indulge a strong presumption that counsel's conduct falls within the wide range of reasonable professional assistance," viewing the actions in light of the law and circumstances confronting counsel at the time of the alleged error.  Raysor v. United States, 647 F.3d 491, 495 (2d Cir. 2011).  The issue under the first prong "is not whether counsel deviated from best practices or most common custom, but whether his representation amounted to incompetence under prevailing professional norms."  Harrington v. United States, 689 F.3d 124, 129-30 (2d Cir. 2012) (internal citations omitted).  Under the second prong, a petitioner cannot show prejudice if the claim or objection the attorney failed to pursue lacks merit.  Id.

Herndon argues that because his defense was based on the theory that a computer hacker had placed the child pornography images on his hard drives, his counsel was ineffective in failing to subpoena a computer forensic expert to examine the hard drives and testify as to relevant technical issues such as viruses and remote log-ins.  As Herndon acknowledges, however, his counsel did employ a computer forensic expert, Monique Ferrara, who

14

"attended Petitioner's trial, sat at the defense table, and provided computer technical assistance to trial counsel." Pet'r's Mot. to Vacate at 32.  Thus, the absence of testimony by a computer forensic expert for the defense resulted not from a failure to subpoena such an expert but rather from a strategic decision not to call the defense expert who was present and available to testify.  "A failure to call a witness for tactical reasons of trial strategy does not satisfy the standard for ineffective assistance of counsel." United States v. Eyman, 313 F.3d 741, 743 (2d Cir. 2002).[5]  Moreover, Herndon's only claim is that Ms. Ferrara would have testified as to the theoretical possibility that a remote hacker could have used his computer to download images.  He has not demonstrated that such a remote-hacker defense, aided by Ms. Ferrara's testimony concerning what a third party could have done, likely would have led to an acquittal.  Such a defense would not have accounted for the powerfully incriminating evidence mentioned earlier specifically linking Herndon to the extensive, well-organized collection of child pornography found on his hard drives.  See United States v. Stahl, 337 F. App'x 31, 34 (2d Cir. 2009).  Thus, this claim

_____

[5] The Second Circuit has held that in a child pornography case, an attorney's decision not to call a computer expert to testify regarding the potential for remote access to the defendant's computer was a reasonable trial strategy, and thus did not constitute ineffective assistance.  See United States v. Stahl, 337 F. App'x 31, 33-34 (2d Cir. 2009).

fails.

Herndon contends that his trial counsel was ineffective in advising him to stipulate to the presence of 655 images of child pornography on his hard drives and failing to inform him of the potential consequences of such a stipulation at sentencing.  He argues that "[i]f the Petitioner had stipulated to at least 10 images, but fewer than 150, Petitioner would have only received a 2 offense level increase" under § 2G2.2(7) rather than the five level increase he received.  Pet'r's Mot. to Vacate at 38.  "In general, counsel's decision to stipulate to certain evidence, like his decisions to offer or object to evidence, involves a strategic choice, which is virtually unchallengeable if made after thorough investigation."  United States v. Gaskin, 364 F.3d 438, 468 (2d Cir. 2004) (internal quotations omitted). "Experienced defense attorneys routinely stipulate to undisputed facts in order to maintain credibility with the jury when challenging other aspects of the prosecution case."  Id.  It is undisputed that the ICE agents found thousands of images of child pornography on Herndon's hard drives, and it would have been against the government's interest to accept a stipulation to fewer than 150 images.  Moreover, Herndon's trial strategy was not to dispute the presence of child pornography on the hard drives but to claim that his computer had been hacked by an unknown third party.  In this context, trial counsel's advice to

stipulate to 655 images was not constitutionally ineffective.

Herndon alleges that his counsel "never explained the effect of the image numbers, i.e., the more the images the greater the sentence enhancement." Pet'r's Mot. to Vacate at 39.  Accepting this allegation as true for present purposes, Herndon has not demonstrated that his counsel's failure to explain the significance of the number of images under the Guidelines amounted to incompetence under prevailing professional norms. Even assuming his counsel had a duty to tell him about this, he has not shown that his counsel's failure to do so prejudiced him in any way.  Any explanation counsel could have provided concerning the significance of the number of images under the Guidelines would not have altered the applicable guideline range or affected the sentence, which was significantly below the range.  Accordingly, this claim does not provide a basis for relief.

Finally, Herndon claims that his trial counsel was ineffective in recommending that he stipulate that the images of child pornography on his computer had been transported in interstate commerce.  Petitioner relies on United States v. Schaefer, 501 F.3d 1197, 1205 (10th Cir. 2007), overruled on other grounds by United States v. Sturm, 672 F.3d 891 (10th Cir. 2012), where the court "decline[d] to assume that Internet use automatically equates with a movement across state lines."  The

Schaefer court recognized that its decision conflicted with the
decisions of other Circuits.  See 501 F.3d at 1203-04 ("We
recognize that, at least upon cursory inspection, th[e] limited
universe of circuit authority appears to uniformly reflect the
view that Internet use is sufficient proof [of § 2252(a)'s
jurisdictional nexus]."  Id. at 1203-04 (citing United States v.
MacEwan, 445 F.3d 237, 244 (3d Cir. 2006), cert. denied, 549 U.S.
882 (2006); United States v. Carroll, 105 F.3d 740, 742 (1st Cir.
1997); United States v. Runyan, 290 F.3d 223, 242 (5th Cir.
2002)).  The Second Circuit has not yet addressed the issue
decided in Schaefer.  See United States v. Graziano, 306 F. App'x
693, 695 n.1 (2d Cir. 2009) ("We need not address in-depth
Graziano's contention that evidence of his internet usage,
standing alone, is insufficient to establish the interstate
commerce element of section 2252(a))."  Given the state of the
law at the pertinent time, and the abundant evidence that Herndon
had subscribed to and viewed child pornography on the Internet,
it was reasonable for defense counsel to enter into the
stipulation.  Moreover, there is no reason to think the
stipulation was prejudicial.  In fact, the government states that
if Herndon had disputed the issue, it would have proven that he
had downloaded images from a website that used servers in
Denmark.  See Govt.'s Response to Pet. at 19.

18

III. <u>Conclusion</u>

Accordingly, the petition is hereby dismissed.  The Clerk may close the file.

So ordered this 30th day of May.


_____
                    /s/RNC
            Robert N. Chatigny
       United States District Judge